## MOTOR VEHICLE CASUALTY COMPANY v.
## GEORGE H. SMITH AND OTHERS.
## GEORGE H. SMITH, RESPONDENT.

76 N. W. (2d) 486.

April 20, 1956—No. 36,772.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for appellant.

*Fred Albert,* for respondent.

MATSON, JUSTICE.

Appeal is by plaintiff insurer from a declaratory judgment of the district court adjudging it liable for indemnity on an automobile insurance contract covering a Willys automobile owned by the named insured, Fred W. Smith.

On December 4, 1953, George H. Smith (hereinafter called George) received injuries in an accident involving the Willys in which he was riding as a passenger. He and one Nick Van Asperen were both employed by the Western Waterproofing Company (hereinafter called Western) and were proceeding to Red Wing, Minnesota, to do a job for their employer pursuant to instructions from Fred W. Smith (hereinafter called Fred), who was the Minnesota supervisor of Western. In addition to the employees, the Willys carried tools, equipment, and materials to be used on the job at Red Wing.

The Willys jeep was owned by Fred and was being used by George and Nick Van Asperen with his consent. It was customary for Fred to permit the use of the Willys in the business of Western, and he was compensated by Western for its use at the rate of six cents per mile, plus reimbursement for the gas and oil used while the Willys was employed in the business of Western.

As a result of his injuries received in the accident, George made a claim and received workmen's compensation benefits from Western's workmen's compensation insurer. He also brought an action for damages against Nick Van Asperen as driver and against Fred, who owned the Willys and was insured by the plaintiff. Fred tendered the defense of the action to plaintiff, who undertook it upon the express condition that the question of whether its policy afforded coverage should be left to future determination. Nick Van Asperen did not tender his defense to plaintiff.

Plaintiff commenced this action on September 27, 1954, against George, Nick Van Asperen, and Fred for a declaratory judgment praying that the policy be construed so as to exclude plaintiff from any liability thereon. The trial court adjudged the plaintiff insurer to be liable under the policy.

The sole question presented by this appeal is whether the trial court erred in interpreting the provisions of the policy to the effect that Fred, *the named insured,* was at the time of the accident fully covered for any liability to George for injuries sustained by the latter while riding as a passenger in the Willys, despite the fact that the latter had claimed and received workmen's compensation benefits from his employer's (Western's) workmen's compensation insurer.

The pertinent provisions of the policy to be construed are as follows:

"INSURING AGREEMENTS

"I.   COVERAGE A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, and arising out of the ownership, maintenance or use of the automobile.

"COVERAGE B—Property Damage Liability

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, and arising out of the ownership, maintenance or use of the automobile.

\*   \*   \*   \*   \*

"III.   DEFINITION OF 'INSURED'

"The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, *also includes* any person while using the automobile and *any person or organization legally responsible for the use thereof,* but only while the automobile is used with the permission of the named insured for the purpose or purposes and during the time for which said permission is given; if the named insured be an individual, such permission may be given only by the named

insured or by an adult member of his household other than a chauffeur or domestic servant. The insurance with respect to any person or organization *other than the named insured does not apply:*

\* \* \* \* \*

"(d) to any employee with respect to injury to or death of another employee of the same employer injured in the course of such employment in an occurrence arising out of the maintenance or use of the automobile in the business of such employer.

\* \* \* \* \*

### "Exclusions

"This policy does not apply:

\* \* \* \* \*

"(d) under coverages A and C, to bodily injury to or death of *any employee of the insured* while engaged in the employment, other than domestic, of the insured, or under coverage A, while engaged in the operation, maintenance or repair of the automobile;

"(e) under coverage A, to any obligation for *which the insured* or any company as his insurer *may be held liable under any workmen's compensation law;*" (Italics supplied.)

■ Paragraph III of the policy expressly defines the *unqualified* word "insured" to include not only the *named* insured but also any person or organization legally responsible for the use of the motor vehicle with the consent of the *named* insured. This very definition contemplates that the term *insured* where *qualified* shall have a different meaning. In the same paragraph III we have an express qualification of that term for the purpose of indicating a restriction upon the insurance coverage afforded by the policy. The restrictive sentence reads:

"\* \* \* The insurance with respect to any person or organization *other than the named insured does not apply:*

\* \* \* \* \*

"(d) to any employee with respect to injury to or death of another employee of the same employer injured in the course of such employment in an occurrence arising out of the maintenance or use of the automobile in the business of such employer." (Italics supplied.)

Obviously the aforesaid provision, with respect to the employee described in subparagraph (d), excludes from coverage all persons or organizations who may be legally responsible for the use of the vehicle but who are not *named* as an insured in the policy. In other words, the definitive language of paragraph III draws a distinction between the *named* and *unnamed* insureds with respect to injuries to the employees described in subparagraph (d) with the result that thereunder the *named* insured, Fred, retained his insurance coverage as to any liability for injuries to George who was an employee only of the *unnamed* insured Western.

Despite the fact that paragraph III contains language expressly designed to retain coverage for the *named* insured, *and he alone,* for any liability arising from the actions of any employee with respect to injury to another employee of the same employer, etc., plaintiff, nevertheless, asserts that such coverage is taken away from the *named* insured by exclusionary sections (d) and (e). Plaintiff's contention rests on the theory that the use of the word *insured* in these exclusionary sections necessarily includes both the *named* insured, Fred, and Western, the latter being an *unnamed* insured by reason of its legal responsibility for the use of Fred's automobile. It is true that the word *insured* in these exclusionary sections is not qualified by a specific adjective such as the word *named,* but this fact is not controlling since the import of a word may be otherwise qualified by the purpose and meaning of the sentence or paragraph in which it is used. The work of the draftsman in expressing the intent of the parties usually goes for naught when words are given a meaning in disregard of the context in which they are used.

Exclusionary section (d) refers to injuries of any employee of the *insured* and as such *applies only to an insured, named or unnamed,* who has an employee who has been injured. Here the named insured, Fred, has no injured or uninjured employees. George, who was injured, is the sole employee of the unnamed insured Western. Likewise exclusionary section (e) pertains to, and excludes from protective coverage, only an *insured, named* or *unnamed,* who may be held liable under any workmen's compensation law. Surely we

need not diagram the obvious fact that Fred, who has no employees, cannot be found to be an insured liable under any workmen's compensation act.

As already noted, plaintiff's theory in substance is that the express definition of *insured* in paragraph A controls all subsequent policy provisions so that the word *insured,* in the absence of a directly qualifying adjective, must necessarily be construed to include both the named and unnamed insured without regard to the qualifying context in which it is found. In subordinating the context to such a strait-jacket definition, the contractual intent is distorted and pursuant to such a strained construction it follows of course that under exclusionary sections (d) and (e) any liability stemming from injury to any employee of one insured must be attributed to the other insured even though the latter has no employees and likewise no liability under any workmen's compensation act. In Pearson v. Johnson, 215 Minn. 480, 10 N. W. (2d) 357, involving interpretation of an exclusionary provision in the light of the policy's definition of the word insured, this court refused to give the exclusionary language a strained and limited meaning which would change or extend the insurer's responsibility for taking care of the named insured's liability. Similarly, we here reject a strait-jacket interpretation of the exclusionary provisions whereby the protective coverage afforded to the *named* insured under the language of the policy as a whole is either defeated or lessened.

An insurance policy is to be liberally construed in favor of the named insured and that liberal construction is not to be frittered away by a process of language dissection which lifts a word from its context whereby it is given (according to an express definition which applies only when such word is unqualified) a meaning which distorts the intent and purpose of the sentence or paragraph from which it has been taken. If words are to be ascribed a rigid and unchanging meaning which controls in utter disregard of a qualifying context, it will not only be well-nigh impossible to draft an insurance contract adaptable to a variety of risks but every policy will become an entrapment for the purchaser of insurance coverage.

Liability insurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them.[1] In the instant case, however, the express definition of the *unqualified* word *insured* was not intended to bring about such an impractical and absurd result since the very definition itself contemplates that the word may be qualified and no ironclad restriction was placed upon the manner in which the qualification might be effected.

Plaintiff's theory rests upon interpretation by dissection and violates the well-established principle that:

"* * * The intent of the contracting parties is to be ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole."[2]

Assuming, however, that plaintiff's construction has any validity, the only result is that the insurance contract is ambiguous since it is subject to two contrary interpretations. Where a reasonable doubt exists as to the meaning of the provisions of an insurance contract, the ambiguity must be resolved in favor of the insured.[3]

Plaintiff's reliance upon Lumber Mut. Cas. Ins. Co. v. Stukes (4 Cir.) 164 F. (2d) 571, is unjustified. In that case, Marshall owned the truck and was the named insured. Timmons was the driver at the time of the accident causing Stukes' death. It was not clear whether Stukes was an employee of Marshall or whether Timmons was an independent contractor who employed Stukes. The case was remanded for a new trial. The court held that, if Stukes was an employee of the "named insured" Marshall, the exclusion would apply. Furthermore, if Stukes was an employee of Timmons, who would then be an "additional insured," the policy would not cover

[1]Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 48 L.R.A.(N.S.) 184; 9 Dunnell, Dig. (3 ed.) § 4659(19).

[2]Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 216, 30 N. W. (2d) 341, 345; see, 9 Dunnell, Dig. (3 ed.) § 4659(9).

[3]See, Zenith Box & Lbr. Co. v. National Union F. Ins. Co. 144 Minn. 386, 175 N. W. 894; 9 Dunnell, Dig. (3 ed.) § 4659(16), and cases therein cited.

Timmons' liability to his employee Stukes since the exclusion clause applied to an "additional" as well as a "named insured." However, the court expressly said that in the latter case *it did not mean to hold that the policy would not cover Marshall* (the "named insured") *for negligent injuries to employees of Timmons* (the "additional insured")*, the situation presented in this case,* or that it would not cover Timmons for negligent injury to the employees of Marshall if Timmons was an independent contractor. That case further points out that the purpose of the exclusion clauses is to prevent overlapping of the various types of insurance. In other words, automobile liability policies are drawn so as to exclude coverage of injuries coming within an employer's workmen's compensation coverage. Applying this rationale to the instant case, it is true that Western's liability to its employee George H. Smith is covered by its workmen's compensation insurer, yet it is equally obvious that Fred W. Smith is not covered in any way except through his automobile insurance for any liability for which he may be held by George H. Smith.

The declaratory judgment of the trial court is affirmed.

Affirmed.