G. C. KOHLMIER, INC. v. DONALD R. MOLLENHAUER.
GENERAL INSURANCE COMPANY, GARNISHEE.
G. C. KOHLMIER, INC. v.
GENERAL INSURANCE COMPANY.
HARTFORD ACCIDENT & INDEMNITY COMPANY,
ADDITIONAL DEFENDANT.

140 N. W. (2d) 47.

January 28, 1966—Nos. 39,852, 39,853.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for appellant.

*Meagher, Geer, Markham & Anderson, M. J. Coyne,* and *O. C. Adamson II,* for respondent.

FRANK T. GALLAGHER, C.

These are appeals from judgments in favor of General Insurance Corporation in a garnishment proceeding and a declaratory action which were consolidated and submitted to the district court on stipulated facts.

The litigation arose out of an accident which occurred on November 15, 1956, in which David B. Fox, an employee of Koochiching County, was injured. Fox had been sent to Owatonna, Minnesota, by the county to pick up a dismantled bridge and return it to the county. G. C. Kohlmier, Inc., was hired by the county to load the bridge. Its employees, Donald R. Mollenhauer and Arnold Byers, assisted Fox in loading the bridge on a truck owned by the county, using a crane owned by Kohlmier. Fox was injured during this loading operation. He received workmen's compensation benefits from the Travelers Insurance Company, the county's compensation insurer. Thereafter, he sued G. C. Kohlmier, Inc., alleging the injuries were caused by the negligence of Kohlmier's agents and employees.

Sometime prior to the accident Koochiching County had entered into a contract of insurance—a comprehensive automobile liability policy— with the General Insurance Corporation. When the county's employee sued Kohlmier, it tendered defense of the action to General, asserting that this policy afforded Kohlmier coverage with respect to Fox's claim. General denied that its policy afforded coverage for injury to a county employee. The relevant portions of that policy read as follows:

"GENERAL INSURANCE CORPORATION

"Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## "INSURING AGREEMENTS

"I. Coverage A—Bodily Injury, Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

\* \* \* \* \*

"III. Definition of Insured

"The unqualified word 'insured' includes the name insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the name insured. \* \* \*

\* \* \* \* \*

## "EXCLUSIONS

"This policy does not apply:

\* \* \* \* \*

"(b) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment \* \* \* of the insured \* \* \* ; or to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law;

"[No 'Severability of Interest' Clause]."

Kohlmier then commenced the declaratory action against General. While that action was pending, Fox's action against Kohlmier was tried and Fox was awarded damages of $21,000. Hartford Accident and Indemnity Company, Kohlmier's insurer, caused the Fox verdict to be paid under a loan agreement with its insured. Hartford was then made an additional defendant in the declaratory action. After Hartford had paid the verdict and before resolution of the declaratory action, still another suit was commenced in Kohlmier's name against one of its employees, Mollenhauer. The gist of that action was that it was the negligence of Mollenhauer

which injured Fox and therefore Kohlmier was entitled to indemnity from its employee. Kohlmier obtained a default judgment against Mollenhauer, following which a garnishment proceeding was commenced in Kohlmier's name against General.[1]

The two matters were consolidated and submitted to the trial court upon stipulated facts. The court found that the policy issued by General to Koochiching County afforded no coverage to Kohlmier or to Mollenhauer with respect to the injury suffered by the county's employee. Kohlmier appealed from the judgments entered in favor of General.

Kohlmier is in effect seeking indemnity from General either directly on the theory that it is an additional insured under Koochiching County's liability insurance policy or indirectly by way of garnishment proceedings against General on the theory that Mollenhauer is an additional insured under the policy. All parties agree that Koochiching County is the only named insured in the policy and that Kohlmier and Mollenhauer were additional insureds under the policy's omnibus provision. There is no dispute that Kohlmier was entitled to indemnity from Mollenhauer, and it is agreed that Fox's claim and judgment against Kohlmier were for bodily injuries sustained while he was employed by Koochiching County. The issue is whether the employee exclusion clause in the policy denies coverage to both Kohlmier and Mollenhauer in this particular instance notwithstanding that they are both additional insureds under the insurance policy. In other words, does the policy give protection to Kohlmier and Mollenhauer in connection with the judgment for injuries sustained by Fox in spite of the clause which excludes coverage of bodily injury "to any employee of the insured"? Kohlmier contends that the exclusion clause should apply *only* in those cases where the employee claiming damages

---

[1] General states in its brief that the reason for this extra litigation is this: "If it is held that General afforded coverage to Kohlmier, then General and Hartford will be co-insurers and each will be ratably liable with respect to the *Fox v. Kohlmier* verdict. However, Hartford allegedly afforded no coverage to Kohlmier's employees. The liability of Mollenhauer will not be covered by Hartford, and General will be the sole insurer if its policy is held applicable. It takes little imagination to determine who instigated the suit against Mollenhauer and the subsequent garnishment proceedings."

*is asserting his claim against the insured by whom he was employed when he was injured.* General contends, to the contrary, that the exclusion applies if the claimant is an employee of any insured; that there is nothing in the language of the policy to limit the exclusion of coverage to cases where the injured party sues his own employer.

This court agrees with the trial judge that there is no reason why the definition of the word "insured" as it appears in the insurance policy should not apply so as to deny Kohlmier and Mollenhauer coverage under the employee exclusion clause. This conclusion is based on the proposition that the plain meaning of an insurance contract should prevail in the absence of any indication that the language used is ambiguous or that the result reached would be contrary to the manifest intentions of the *contracting* parties as applied *in this particular case.*

■ *Verbal ambiguity.* As pointed out by the trial judge, the "unqualified" word "insured" has been carefully defined in the insurance policy to include both the named insured and the various omnibus insured. By using the modifier "unqualified" the contracting parties were obviously taking into account various provisions in the policy where the word "insured" is expressly limited to the *named* insured only.[2] These provisions contrast with the exclusion clause which plainly states that the policy does not apply to bodily injury to "any employee of *the insured* while engaged in the employment * * * of *the insured* * * * ." (Italics supplied.) Since there is neither a verbal nor a contextual qualification of the word "insured" as applied in this clause, we must presume that by the word "insured" the contracting parties meant both the named insured and the omnibus insured, rather than simply the insured who happens to be claiming coverage in the particular instance.[3]

---

[2] E. g., "The insurance with respect to any person or organization *other than the named insured* does not apply:

"(a) with respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company; * * *

\* \* \* \* \*

"(1) Owned Automobile—an automobile *owned by the named insured.*" (Italics supplied.)

[3] The argument has been made that a verbal ambiguity arises from the absence of any pluralizing language suggesting that the exclusion clause was in-

■ *Manifest intentions of the contracting parties.* An ambiguity may also arise because of the fact that the presumptive meaning of language used in a contract would thwart the intentions or purposes of the contracting parties. Applied to this case, would it be inconsistent with the intentions of General and Koochiching County, the parties to the contract, if the court were to hold that the exclusion clause denied both Kohlmier and Mollenhauer coverage because of the fact that the injured party was an employee of Koochiching County and was thus able to collect workmen's compensation from Koochiching County?

The foregoing issue has been handled squarely in Judge Brown's well-reasoned opinion in American Fidelity & Cas. Co. v. St. Paul-Mercury Ind. Co.[4] In that case the court properly rejected any suggestion that denial of coverage in a situation similar to the one at bar would be inconsistent with the intentions of the contracting parties. On the contrary, it argued, inconsistency would only arise if the exclusion clause were held not to apply. The purpose of the exclusion clause, as the court saw it from the point of view of the contracting parties, is to eliminate from coverage persons already covered by the named insured's employer liability insurance. If this was not the effect of the exclusion clause, then the named insured would suffer since then he would be paying double premiums for basically the same coverage. After all, it is the named insured, not the omnibus insured, who obtained this policy. The separate public liability insurance policy is intended to cover the rest of the public still left unprotected by workmen's compensation coverage, i. e., "third parties, members of the public and persons not in the status of employees." [5] As stated by Judge Brown in that case:

---

tended to apply to employees of *all* insured. Apart from the fact that the words "the insured" are, by definition, susceptible to a plural meaning, of even greater significance is the fact that the use of any more definitive language would unduly restrict the scope of the *named* insured's coverage. Prior case law has already established that the exclusion clause was never intended to deny the named insured protection when the injured party is an employee of an omnibus insured or of another named insured. See footnote 8, *infra*.

[4] American Fidelity & Cas. Co. v. St. Paul-Mercury Ind. Co. (5 Cir.) 248 F. (2d) 509.

[5] Id. 248 F. (2d) 516.

"* * * [T]he purpose of an assured to integrate his program and reduce cost is thwarted if the policies, so carefully dovetailed, are construed to duplicate coverage."[6]

The fact that other unnamed persons are given protection as omnibus insured under the same policy is certainly no reason for extending their coverage beyond that which the named insured has prudently afforded himself.[7]

From the point of view of the insurer, it is equally difficult to see that the insurer regarded the exclusion clause as applicable only when the party injured sued his own employer. This point is considered decisive in Standard Surety & Cas. Co. v. Maryland Cas. Co. 281 App. Div. 446, 450, 119 N. Y. S. (2d) 795, 799:

"The exclusion clause was inserted in the policy for the benefit of the

---

[6] Ibid.

[7] Perhaps this statement would not carry much force if it could be shown that the purpose of the omnibus provision in the contract was to afford a potential additional insured such as Kohlmier or Mollenhauer *protection* equivalent to that given to the named insured: Just as the named insured avoids overlapping coverage by relying on its separate employer's liability insurance for protection from any obligations arising out of injuries to *its* employees, so too would each additional insured look to its separate employer's liability insurance to avoid a similar overlapping of coverage when one of its employees is injured; all other injured persons, however, would be covered. Nevertheless, in the absence of a clearer indication of such largesse on the part of the named insured, the better explanation for the omnibus clause would seem to be the more limited purpose of simply assuring recovery to the injured party in cases where the named insured may be involved though free from legal liability. The reputation of the named insured would still be at stake, and for a business enterprise or governmental unit this is a matter which should not be jeopardized by any unseemly dispute or legal distinction only dimly perceived by the injured party seeking relief. In this context, any incidental protection afforded the additional insured is logically limited to those situations in which the injured party has no legal recourse against the named insured. Admittedly ascribing such a limited purpose to the omnibus clause would be severely tested in a case where the injured party *as well as* the additional insured being sued are employees of the named insured, but that is a situation to which this court need not address itself in this opinion.

insurer, and, while we do not lose sight of the canon that the policy should be construed in favor of the insured, we believe the clause should not be so narrowly interpreted as to render it practically meaningless to the insurer. The purpose of the exclusion clause is to exclude certain risks or probabilities of injury which the insurer considered too great to cover. One of these risks was 'bodily injury to * * * any employee of the insured'. The *risk* was not that an injured employee of an insured would sue or otherwise claim against his own employer, but that the employee of any user of the 'insured' vehicle would be *injured*. The exclusion clause is concerned with the hazards to which the policy did not apply and it should be interpreted in terms of the injuries to be excluded, not in terms of the persons who are to be indemnified. This latter consideration is the concern of policy clause entitled 'Definition of "Insured." '

"The Wisconsin construction urged here [that the exclusion clause applies only to the employee of the insured being sued] completely emasculates the significance of the exclusion provisions as far as the insurer is concerned. If we adopt the reasoning of the Wisconsin court and read into the exclusion clause the limitation of that clause measured by situations arising *after* the injury (where the claim is brought against the injured's employer), we are in effect holding that the insurer has agreed not to defend or indemnify the named insured against claims arising out of injuries to his employees, but that the insurer will defend another insured against that very risk. To state the proposition is to recognize its fallacy. If not wholly inconceivable, it is certainly not reasonable that the insurer even remotely contemplated that its liability for the very risk excluded would depend upon the choice by the injured employee of the party to be made defendant."

Cf. Pearson v. Johnson, 215 Minn. 480, 10 N. W. (2d) 357.

As for the argument that any ambiguity should be resolved against the insurer, we may answer that not only does no ambiguity exist but also that if any ambiguity does exist, it should be resolved in favor of the named insured who must eventually bear the cost of excess coverage.

The court in American Fidelity & Cas. Co. v. St. Paul-Mercury Ind. Co. *supra,* has also handled effectively the argument that the proposed

application of the exclusion clause in this case would commit the court to the anomalous position of denying the *named insured* coverage when the person injured is an employee of an omnibus insured. That court was *not* so committed, and indeed this court has already held that the *named insured* will not be denied coverage in such a situation.[8] When the *named insured* is denied coverage, an ambiguity *does* arise since this result would obviously be contrary to the basic intent of the contracting parties to provide the *named insured* adequate protection. Then the "plain meaning"

---

[8] Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 76 N. W. (2d) 486. Note that the court held that an insurance policy is to be liberally construed in favor of the named insured—not necessarily, as appellant would like to think, in favor of an unnamed insured who happens to be asserting relief thereunder. The court also noted, in deciding that the named insured should be covered when employee of omnibus insured is injured, that the "*purpose* of the exclusion clauses is to prevent overlapping of the various types of insurance" (italics supplied), but that the *named insured* had no such overlapping insurance. 247 Minn. 158, 76 N. W. (2d) 491.

It must be admitted, however, that the court did use some rather broad language to the effect that the exclusion clause "*applies only to an insured, named or unnamed,* who has an employee who has been injured." 247 Minn. 155, 76 N. W. (2d) 490. This language is dictum and is not therefore binding especially since the court apparently cited the Pearson case with approval. 247 Minn. 156, 76 N.W. (2d) 490.

The other case in point is Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co. 268 Minn. 390, 129 N. W. (2d) 777 (*named* insured covered for injury to employee of another *named* insured). Admittedly this case also uses some broad language when it declares that the issue presented is "whether exclusion (d) * * * applies to an employee of an insured other than the insured who seeks coverage." 268 Minn. 396, 129 N. W. (2d) 782. The court's reliance, however, on the fact that the insured seeking coverage is a *named* insured rather than merely an *additional* insured would seem to negate any implications to be drawn from this unfortunate statement of the issue at stake. 268 Minn. 397, 129 N. W. (2d) 782.

Foreign jurisdictions are generally divided on the issue at bar. See, Risjord and Austin, *Who is "The Insured"?*, 24 U. of Kansas City L. Rev. 65, 70 to 74, and *"Who is 'The Insured'" Revisited,* 28 Ins. Counsel J. 100. In view of our opinion that the trial court in the instant case should be affirmed, we deem it unnecessary to review all of the cases cited pro and con in the briefs of the parties.

of the language must give way to the intentions of the contracting parties. In the case at bar the "plain meaning" of the exclusion clause must prevail.

Affirmed.